1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CARLOS TOMAS GARCIA,

11               Petitioner,                      No. CIV S-04-1779 MCE DAD P

12        vs.

13   KATHY MENDOZA-POWERS, et al.,

14               Respondents.              <u>FINDINGS & RECOMMENDATIONS</u>

15   _____/

16               Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that the decision of the California

18   Board of Parole Hearings (hereinafter "Board") to deny him parole at his second parole

19   consideration hearing on November 27, 2001, violated his rights to due process and equal

20   protection.  He also alleges that his Fourteenth Amendment rights were violated because the

21   Board disregarded regulations ensuring fair suitability hearings and instead operated under a

22   policy requiring that all murderers be found unsuitable for parole.  Finally, petitioner alleges that

23   the Board's requirement that he participate in "further programming," when he is "permanently

24   medically disabled," violated his rights under the Americans with Disabilities Act.  Upon careful

25   consideration of the record and the applicable law, the undersigned will recommend that

26   petitioner's application for habeas corpus relief be denied.

PROCEDURAL BACKGROUND

On May 8, 1984, a Placer County Superior Court jury found petitioner guilty of second degree murder with the use of a firearm.  (Pet. at consecutive pgs. 1, 4; Answer, Ex. A at 1-2.)  On June 11, 1984, petitioner was sentenced to fifteen years to life for the second degree murder, two years for the firearm enhancement, and five years for a prior serious felony conviction, for a total of twenty-two years to life in state prison.  (Id.; Pet., "Exhibits" at 178-80.)

On November 27, 2001, petitioner appeared before a Board panel for his second parole suitability hearing.  (Pet., "Exhibits" at 16, 36.)  At that time, petitioner had served seventeen years in prison.  Petitioner waived his right to be present and to have an attorney represent him at the hearing.  (Id. at 4-5.)  The Board found petitioner unsuitable for parole at that time and deferred his next parole hearing for a period of four years.  (Id. at 27.)

Petitioner challenged the Board's November 27, 2001 decision in a petition for a writ of habeas corpus filed in the Marin County Superior Court.  (Id. at 166-67.)  That petition was denied in a reasoned decision.  (Id.)  The Superior Court concluded that the Board's decision finding petitioner unsuitable for parole was supported by sufficient evidence and that there was no evidence to support petitioner's claim that the Board operated under a "blanket no parole policy."  (Id.)  Petitioner subsequently filed habeas petitions in the California Court of Appeal and the California Supreme Court, which were summarily denied.  (Answer at 6.)

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

2

1  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377
2  (1972).

3         This action is governed by the Antiterrorism and Effective Death Penalty Act of
4  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d
5  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting
6  habeas corpus relief:

7              An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall
8              not be granted with respect to any claim that was adjudicated on
            the merits in State court proceedings unless the adjudication of the
9              claim -

10             (1) resulted in a decision that was contrary to, or involved
            an unreasonable application of, clearly established Federal law, as
11             determined by the Supreme Court of the United States; or

12             (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
13             State court proceeding.

14  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362
15  (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

16        The court looks to the last reasoned state court decision as the basis for the state
17  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state
18  court reaches a decision on the merits but provides no reasoning to support its conclusion, a
19  federal habeas court independently reviews the record to determine whether habeas corpus relief
20  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);
21  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not
22  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the
23  AEDPA's deferential standard does not apply and a federal habeas court must review the claim
24  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,
25  1167 (9th Cir. 2002).
26  /////

II.  Petitioner's Claims

Petitioner claims that the Board: (1) violated his rights to due process and equal protection when it failed to find him suitable for parole at his November 27, 2001 hearing; and (2) violated his rights pursuant to the Americans with Disabilities Act when it required him to participate in institutional programming.  (Memorandum of Points and Authorities in Support of Petition (P&A) at 2, 8-10.)  He also claims that his right to due process was violated because the Board operated under an illegal policy requiring that all murderers be found unsuitable for parole. (Id. at 9.)

A.  Background

The Board commenced its November 27, 2001, decision finding petitioner unsuitable for parole by stating that the panel had reviewed "all of the information received from the public" and had concluded that "the prisoner is not suitable for parole and that he would pose an unreasonable risk of danger to society and a threat to public safety if released from prison at this time."  (Answer, Ex. A at 25.)  The phrases "unreasonable risk of danger to society" and "a threat to public safety" are derived from § 3041(b) of the California Penal Code and § 2281(a) of Title 15 of the California Code of Regulations.  Pursuant to the Penal Code provision,

> [t]he panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Cal. Penal Code § 3041(b).

The state regulation that governs parole suitability findings for life prisoners states as follows with regard to the statutory requirement of California Penal Code § 3041(b): "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to /////

4

society if released from prison." Cal. Code Regs. tit. 15, § 2281(a).  The same regulation

requires the Board to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs. tit. 15, § 2281(b).

The regulation identifies circumstances that tend to show suitability or

unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances tend to show that a

prisoner is suitable for release: the prisoner has no juvenile record of assaulting others or

committing crimes with a potential of personal harm to victims; the prisoner has experienced

reasonably stable relationships with others; the prisoner has performed acts that tend to indicate

the presence of remorse or has given indications that he understands the nature and magnitude of

his offense; the prisoner committed his crime as the result of significant stress in his life; the

prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the

probability of recidivism; the prisoner has made realistic plans for release or has developed

marketable skills that can be put to use upon release; institutional activities indicate an enhanced

ability to function within the law upon release.  Id., § 2281(d).

The following circumstances tend to indicate unsuitability for release: the prisoner

committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a

previous record of violence; the prisoner has an unstable social history; the prisoner's crime was

a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to

the offense; the prisoner has engaged in serious misconduct in prison.  Id., § 2281(c).  Factors to

consider in deciding whether the prisoner's offense was committed in an especially heinous,

atrocious, or cruel manner include: multiple victims were attacked, injured, or killed in the same

or separate incidents; the offense was carried out in a dispassionate and calculated manner, such

as an execution-style murder; the victim was abused, defiled or mutilated during or after the

offense; the offense was carried out in a manner that demonstrated an exceptionally callous

disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation

to the offense.  Cal. Code Regs., tit. 15, § 2281(c)(1)(A) - (E).  Under current California law, the

Board is apparently not required to refer to sentencing matrixes or compare the prisoner's crime

to others of the same type in deciding whether the crime was especially cruel or exceptionally

callous but may find the crime especially cruel or exceptionally callous if there was violence or

viciousness beyond what was "minimally necessary" for a conviction.  In re Dannenberg, 34 Cal.

4th 1061, 1095 (2005).

　　　　　　In addressing the factors it considered in reaching its 2001 decision that petitioner

was unsuitable for parole, the Board stated as follows:

PRESIDING COMMISSIONER MUNOZ:

This Panel has reviewed all information received from the public
and relied on the following circumstances in concluding that the
prisoner is not suitable for parole and that he would pose an
unreasonable risk of danger to society and a threat to public safety
if released from prison at this time.  Many factors were considered.
First and foremost was the commitment offense and it's [sic]
nature.  This offense was carried out in a cruel manner.  A manner
which demonstrates a callous disregard for human suffering.
These conclusions were drawn from the Statement of Facts
wherein the prisoner, while visiting and drinking large amounts of
alcohol with his friend, the victim, Mr. Boney.  He eventually took
the victim to his residence.  Then somewhere along the line, he
apparently became angry with the victim and retrieved the gun
from within his residence, shot the victim in the chest.  This
pierced his heart resulting in the death of his long time friend.  The
inmate fled the scene without giving medical aid or notifying the
police and immediately caught a plane to his mother's residence in
San Diego.  He was subsequently arrested by San Diego
authorities.  In regards to his previous record, the inmate does have
a lengthy record starting as a juvenile.  He does have some
violence as a juvenile.  He was involved in an escalating pattern of
criminal conduct.  He does have a history of unstable and
tumultuous relationships.  I'm referring to his use and abuse of

6

drugs and alcohol.  And the record reflects a couple of arrests for driving under the influence.  And also this inmate has failed to profit from society's previous attempts to correct his criminality.  Such attempts include juvenile probation and adult probation, county jail time, a parole, and a prior prison term.  Institutional behavior, the inmate has refused to participate in any programming, as indicated by Mr. Harmon during his reading of the post-conviction factors.  The only positive thing he has accomplished since his last hearing is that he has not received any 115's.  However, he has had a total of six 115'd [sic] during his entire period of incarceration.  And as far as psychiatric factors go, we will note that all reports are unfavorable.  He refused to cooperate at the most recent evaluation with Dr. Beermann.  He would not take part.  His initial one with Dr. Crawford, that was negative.  Dr. Crawford writes that the diagnosis of psychopathology is closely related to the offense.  Violence potential in the past has been above average, particularly in the presence of substance abuse.  Current violence is average in a less controlled setting such as the community, he would be unpredictable.  If paroled, drug and alcohol access [sic] should be imposed.  If retained, it is recommended that he be encouraged to become more involved in self-help groups and vocational training.  In the counselor's summary, CCI Hawkins writes, that the inmate would pose a moderate degree of threat if he were returned to the community at this time.  His parole plans, he has no parole plans.  He refused to submit any and as far as the 3042 responses are concerned, we do have correspondence from the District Attorney from the County of Placer opposing parole suitability.  This Panel makes the following findings.  That the prisoner needs to participate in self-help and therapy programming in order to face, discuss, understand, and cope with stress in a non-destructive manner.  He needs to delve deep into the causation factors involved in the commitment offense.  He needs to come to terms with what he did and his role in the killing of his long time friend.  Until progress is made, this prisoner continues to be unpredictable and a threat to others.  The only thing we can commend him for not receiving any 115's for – since his last Parole Consideration Hearing.  However, this positive aspect of his behavior does not outweigh the factors of unsuitability.  In a separate decision, this Hearing Panel finds that the prisoner has been convicted of murder in the second degree, and it is not reasonable to expect that parole would be granted at a hearing during the next four years.  The specific reasons for this finding are as follows:  The gravity of the committing offense was especially cruel and callous.  Specifically, while drinking (indiscernible) alcohol, he shot and killed his long time friend.  He fled the scene without summoning aid or the police.  He then boarded a plane and flew to San Diego, where he went to his mother's house.  This offense was carried out in a manner which demonstrates a callous disregard for human suffering and the motive for this crime was inexplicable.  The prisoner does have a prior record of violent behavior including – it

goes all the way back to his juvenile years when he was involved in a knife fight with his stepfather. He has a prior prison term. He was sent to CDC for robbery and he has a history of unstable and tumultuous relationships with others. As a juvenile, he was a runaway from home. His record reflects a record of use and abuse of drugs and alcohol. And although he has no serious 115's since the last hearing, he's had a total of six 115's during his period of incarceration. It should be noted that the inmate refused to cooperate in his scheduled psychiatric evaluation and his prior evaluation was not favorable. His current counselor says he is a moderate threat to the public if released from prison at this time. The Panel recommends that the prisoner remain disciplinary free, that also that you change your current course of action to take part in the programs offered by the institution, to upgrade vocationally and educationally, and to participate in any and all self-help and therapy programming, that becomes available. Any comments, Mr. Harmon?

DEPUTY COMMISSIONER HARMON:

Nothing further. I would just ask Mr. Garcia maybe to take a moment and reassess his decision not to participate in the self-help group programs. I believe that he is making a poor choice by not participating and I would hope that four years from now he does make an appearance before the Board of Prison Terms with a good record of participation.

PRESIDING COMMISSIONER MUNOZ:

All right. Thank you. That concludes the hearing for inmate Garcia and the reading of the decision.

(Answer, Ex. A at 25-30.)

      B. <u>Due Process</u>

        Petitioner claims that the failure of the Board to find him suitable for parole at the November 27, 2001, parole suitability hearing deprived him of his liberty without due process of law. The Marin County Superior Court denied petitioner relief on his due process claim in a decision on the merits, concluding that the Board's 2001 decision was supported by sufficient evidence and did not violate petitioner's right to due process. (Pet., "Exhibits," at 166-67.) For the reasons explained below, the Marin County Superior Court's decision is not contrary to or an unreasonable application of federal law and should not be set aside.

/////

8

1        The Due Process Clause of the Fourteenth Amendment prohibits state action that

2   deprives a person of life, liberty, or property without due process of law.  A person alleging due

3   process violations must first demonstrate that he or she was deprived of a liberty or property

4   interest protected by the Due Process Clause and then show that the procedures attendant upon

5   the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v.

6   Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir.

7   2002).

8        A protected liberty interest may arise from either the Due Process Clause of the

9   United States Constitution or state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

10  The United States Constitution does not, of its own force, create a protected liberty interest in a

11  parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).

12  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

13  parole release will be granted' when or unless certain designated findings are made, and thereby

14  gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz

15  v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a

16  cognizable liberty interest in release on parole, even for prisoners who have not already been

17  granted a parole date.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006);

18  Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903.  Accordingly,

19  this court must examine whether the deprivation of petitioner's liberty interest in this case lacked

20  adequate procedural protections and therefore violated due process.

21        Because "parole-related decisions are not part of the criminal prosecution, the full

22  panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

23  Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and

24  citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due

25  process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded

26  notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the

9

1  reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v.

2  Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving

3  parole issues).  Violation of state mandated procedures will constitute a due process violation

4  only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

5              In California, the setting of a parole date for a state prisoner is conditioned on a

6  finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

7  requirements of due process in the parole suitability setting are satisfied "if some evidence

8  supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

9  445, 456 (1985)); Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v. Estelle,

10  974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence" standard

11  is "clearly established" federal law.  Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at 456).  "The

12  'some evidence' standard is minimally stringent," and a decision will be upheld if there is any

13  evidence in the record that could support the conclusion reached by the factfinder.  Powell, 33

14  F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy,

15  801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's decision

16  must have some indicia of reliability."  Jancsek, 833 F.2d at 1390.  See also Perveler, 974 F.2d at

17  1134.  Determining whether the "some evidence" standard is satisfied does not require

18  examination of the entire record, independent assessment of the credibility of witnesses, or the

19  weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any reliable

20  evidence in the record that could support the conclusion reached.  Id.

21              In recent years the Ninth Circuit Court of Appeals has been called upon to address

22  the issues raised by petitions such as that now pending before this court in three significant cases,

23  each of which will be discussed below.  First, in Biggs, the Ninth Circuit Court of Appeals

24  recognized that a continued reliance on an unchanging factor such as the circumstances of the

25  offense could at some point result in a due process violation.  That holding has been

26  acknowledged as representing the law of the circuit.  Irons v. Carey, 505 F.3d 846, 853 (9th Cir.

1  2007); Sass, 461 F.3d at 1129.  While the court in Biggs rejected several of the reasons given by

2  the Board for finding the petitioner in that case unsuitable for parole, it upheld three:  (1)

3  petitioner's commitment offense involved the murder of a witness; (2) the murder was carried

4  out in a manner exhibiting a callous disregard for the life and suffering of another; and (3)

5  petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.  However, the court in Biggs

6  cautioned that continued reliance solely upon the gravity of the offense of conviction and

7  petitioner's conduct prior to committing that offense in denying parole could, at some point,

8  violate due process.  In this regard, the court observed:

9               As in the present instance, the parole board's sole supportable
               reliance on the gravity of the offense and conduct prior to
10              imprisonment to justify denial of parole can be initially justified as
               fulfilling the requirements set forth by state law.  Over time,
11              however, should Biggs continue to demonstrate exemplary
               behavior and evidence of rehabilitation, denying him a parole date
12              simply because of the nature of his offense would raise serious
               questions involving his liberty interest in parole.
13

14  Id. at 916.  The court also stated that "[a] continued reliance in the future on an unchanging

15  factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the

16  rehabilitative goals espoused by the prison system and could result in a due process violation."

17  Id. at 917.

18          In Sass, the Board found the petitioner unsuitable for parole at his third suitability

19  hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

20  461 F.3d at 1126.  Citing Biggs, the petitioner in Sass contended that reliance on these

21  unchanging factors violated due process.  The court disagreed, concluding that these factors

22  amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court

23  provided the following explanation for its holding:

24              While upholding an unsuitability determination based on these
               same factors, we previously acknowledged that "continued reliance
25              in the future on an unchanging factor, the circumstance of the
               offense and conduct prior to imprisonment, runs contrary to the
26              rehabilitative goals espoused by the prison system and could result

11

1  in a due process violation." Biggs, 334 F.3d at 917 (emphasis
   added).  Under AEDPA it is not our function to speculate about
2  how future parole hearings could proceed.  Cf. id.  The evidence of
   Sass' prior offenses and the gravity of his convicted offenses
3  constitute some evidence to support the Board's decision.
   Consequently, the state court decisions upholding the denials were
4  neither contrary to, nor did they involve an unreasonable
   application of, clearly established Federal law as determined by the
5  Supreme Court of the United States.  28 U.S.C. § 2254(d).

6  Id.

7          In Irons the Ninth Circuit sought to harmonize the holdings in Biggs and Sass,

8  stating as follows:

9          Because the murder Sass committed was less callous and cruel than
           the one committed by Irons, and because Sass was likewise denied
10         parole in spite of exemplary conduct in prison and evidence of
           rehabilitation, our decision in Sass precludes us from accepting
11         Iron's due process argument or otherwise affirming the district
           court's grant of relief.
12
           We note that in all the cases in which we have held that a parole
13         board's decision to deem a prisoner unsuitable for parole solely on
           the basis of his commitment offense comports with due process,
14         the decision was made before the inmate had served the minimum
           number of years required by his sentence. Specifically, in Biggs,
15         Sass, and here, the petitioners had not served the minimum number
           of years to which they had been sentenced at the time of the
16         challenged parole denial by the Board. Biggs, 334 F.3d at 912;
           Sass, 461 F.3d 1125. All we held in those cases and all we hold
17         today, therefore, is that, given the particular circumstances of the
           offenses in these cases, due process was not violated when these
18         prisoners were deemed unsuitable for parole prior to the expiration
           of their minimum terms.
19
           Furthermore, we note that in Sass and in the case before us there
20         was substantial evidence in the record demonstrating rehabilitation.
           In both cases, the California Board of Prison Terms appeared to
21         give little or no weight to this evidence in reaching its conclusion
           that Sass and Irons presently constituted a danger to society and
22         thus were unsuitable for parole. We hope that the Board will come
           to recognize that in some cases, indefinite detention based solely
23         on an inmate's commitment offense, regardless of the extent of his
           rehabilitation, will at some point violate due process, given the
24         liberty interest in parole that flows from the relevant California
           statutes.  Biggs, 334 F.3d at 917.
25

26  Irons, 505 F.3d at 664-65.

                                    12

1    After taking into consideration the Ninth Circuit decisions in <u>Biggs</u>, <u>Sass</u>, and

2   <u>Irons</u>[1], and for the reasons set forth below, this court concludes that petitioner is not entitled to

3   federal habeas relief with respect to his due process challenge to the November 27, 2001 Board

4   decision denying him parole.

5    First, and perhaps most importantly, at the time of the November 27, 2001 parole

6   suitability hearing, petitioner had not yet served the minimum number of years required by his

7   sentence.  Pursuant to the holding in <u>Irons</u>, petitioner's right to due process was not violated

8   when he was deemed unsuitable for parole prior to the expiration of his minimum term.  <u>Irons</u>,

9   505 F.3d at 665.  Further, the Board's decision that petitioner was unsuitable for parole and that

10   his release would unreasonably endanger public safety was supported by "some evidence" that

11   bore "indicia of reliability."  <u>Jancsek</u>, 833 F.2d at 1390.  As noted by the Marin County Superior

12   Court in denying petitioner habeas relief:

13    [T]he Board found numerous grounds for denying parole,
     including:

14

15    •    the nature and gravity of the offense;

16    •    a lengthy and escalating criminal history;

17    •    a history of unstable relationships;

18    •    the association between his criminal activity and his long-
          term abuse of drugs and alcohol;

19    •    his failure to profit from society's previous attempts to
          correct his criminal behavior, including juvenile and adult
20        probation, county jail time, a prior prison term and a prior
          parole;

21   /////

22

23    [1]  Even more recently a panel of the Ninth Circuit in <u>Hayward v. Marshall</u>, 512 F.3d 536,

24   546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the
     unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some

25   evidence" supporting the governor's decision to reverse a parole grant on the basis that the
     petitioner would pose a continuing danger to society.  However, on May 16, 2008, the Court of

26   Appeals decided to rehear that case en banc.  <u>Hayward v. Marshall</u>, 527 F.3d 797 (9th Cir. 2008).
     Therefore, the panel decision in <u>Hayward</u> is no longer citable precedent.

- unsatisfactory prison conduct, including a number of early
  disciplinary violations and a failure to participate in any
  work, education or self-help programs throughout the four
  years preceding the hearing;

- unfavorable psychiatric reports;

- the absence of any plans for finding a home or making a
  living on parole; and

- the absence of any letters of support from anyone, along
  with written opposition by the office of the District
  Attorney of Placer County.  (People's Exhibit E pp. 21-26.)

While any one of these grounds taken alone would suffice to
support the decision to deny parole, there is evidence in the record
to support every one of them.

(Pet., "Exhibits," at 166-67.)  A review of the record reflects that there was some reliable

evidence before the Board to support each of these grounds upon which the Board based its

parole decision.  These factors, in conjunction with the seriousness of petitioner's crime of

conviction, constitute "some evidence" supporting the Board's decision to deny petitioner a

parole date.  Sass, 469 F.3d at 1129.

Petitioner disputes some of the Board's findings.  He claims that he has not

refused to participate in institutional programming.  (P&A at 4.)  He explains that "prior to [his]

increasingly debilitating back, neck, and hip injuries," he participated in a prison job for which he

received positive performance reviews and that he received a vocational certificate in small

engine repair.  (Id., "Exhibits" at 161.)  It does appear from the record that petitioner has

herniated discs in his back and osteoarthritis which cause him severe pain and difficulty walking.

("Exhibits," at 63-64, 76, 78, 83, 161, 127-A; P&A at 5.)  Petitioner contends that throughout his

current period of incarceration his physical problems "have rendered him unable to perform the

tasks associated with prison work and vocational programming."  (P&A at 5.)  In 1987, a prison

physician recommended that petitioner be placed on "nonwork status" because he "doubt[ed] that

there is any work that would be compatible with his medical problems."  ("Exhibits" at 64.)

Petitioner explains that since 1987, his condition has worsened, and that he has been found to be

14

"permanently disabled for Supplemental Security Income and worker's compensation disability benefit payment purposes."  (P&A at 6.)  Between 1989 and 1990 petitioner was determined to be "totally disabled" due to "compressive neuropathy."  ("Exhibits" at 66.)  Petitioner also applied to participate in a substance abuse program at the Richard J. Donovan Correctional Facility but was denied access to the program because it was not available to "lifers."  (Id. at 90.) Notwithstanding the above, respondent has provided evidence that petitioner was cleared for light duty work until several months after his parole hearing, in June 2002.  (Id. at 111-16, 118, 124-25.)

Petitioner also complains that: (1) the letter from the Attorney General relied on by the Board to deny him a parole date was not furnished to petitioner prior to the hearing and therefore should not have been considered by the Board (P&A at 11-12); (2) the Board's advice to petitioner to "upgrade vocationally and educationally" was improper because a majority of the programs are conducted at night and his custody level does not permit evening programming; because the programs are "Christian based," whereas petitioner "is of Indian descent and is a practitioner of his Indian religion;" and because he is medically unable to work or to engage in programming activities (id. at 13-16); (3) the Board improperly criticized him for failing to report to "his psyche evaluation appointment" and to appear for the parole consideration hearing, when petitioner was unable to climb stairs in order to attend these meetings (id. at 15); (4) the Board improperly "failed to consider Petitioner's considerably extensive cell studies in law and attained paralegal skills" (id. at 16); (5) the Board relied on incorrect information in finding him unsuitable for parole in that there was no evidence in the record that the murder was carried out in a cruel manner or with a disregard for human suffering (id. at 17, 27-28, 33)[2]; (6) petitioner only had one psychological evaluation, which opined that his potential for violence was only

---

[2]  Petitioner contends that "as murder cases go, Petitioner's case is undoubtedly one of the least egregious and simple, satisfying, if at all, the bare minimum elements to support a second degree murder conviction."  (Id. at 20.)

1  average (id. at 18); (7) the Board erred in considering "several ancient and petty rules violations

2  reports as factors tending to show parole unsuitability," when petitioner was not guilty of these

3  violations, has never received a disciplinary infraction for violent behavior, and has remained

4  disciplinary free for six years (id. at 21); (8) the transcript of the November 27, 2001 parole

5  consideration hearing contains numerous "indiscernible" entries, rendering it impossible for

6  petitioner to effectively challenge the Board's decision (id. at 23); (9) the fact that petitioner had

7  a drug abuse problem twenty years ago does not "make him an unreasonable risk of danger

8  today" (id. at 24); (10) the Board improperly failed to consider factors in favor of suitability, such

9  as petitioner's participation in prison programs before he became disabled, the fact that he earned

10 a high school diploma and certificate in small engine repair while in prison, and his unsuccessful

11 efforts to enroll in a substance abuse program while in prison; and (11) contrary to the Board's

12 suggestion, he does not need therapy (id. at 33-34; "Exhibits" at 184).

13        As discussed above, federal due process requires only that the Board's decision be

14 based on "some evidence" bearing "indicia of reliability."  Jancsek, 833 F.2d at 1390.  Although

15 petitioner attempts to minimize the Board's findings, this court agrees with the Marin County

16 Superior Court that there is "some evidence" in the record to support the Board's finding that

17 petitioner was unsuitable for parole.  This court notes that, while there is clearly evidence in the

18 record that petitioner has medical problems, there is also evidence that he was able to perform

19 light work at the time of the parole suitability hearing.  In addition, the fact that a few of the

20 words spoken by the Board members were unintelligible to the transcriber does not change this

21 court's ultimate conclusion.  Petitioner has not demonstrated that any omission in the transcript

22 has prejudiced him.  See United States v. Anzalone, 886 F.2d 229, 232 (9th Cir. 1989) ("The

23 second reason that appellant's claim fails is that [he] has not pointed to any specific prejudice he

24 has suffered from the alleged errors in the transcripts . . . . [E]ven assuming there were omissions

25 in the transcripts, appellant cannot prevail without a showing of specific prejudice.").

26 /////

1    The Board's 2001 decision that petitioner was unsuitable for parole and would

2    pose a danger to society if released meets the minimally stringent test set forth by the Ninth

3    Circuit in <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u>.  Accordingly, petitioner is not entitled to relief on his claim that

4    the Board's failure to find him suitable for parole at the November 27, 2001, hearing violated his

5    right to due process.  <u>Sass</u>, 461 F.3d at 1129; <u>Irons</u>, 505 F.3d at 664-65.[3]

6         C.  <u>Equal Protection</u>

7         Petitioner claims that his right to equal protection was violated when the Board

8    failed to find him suitable for parole.  A petitioner raising an equal protection claim in the parole

9    context must demonstrate that he was treated differently from other similarly situated prisoners

10   and that the Board lacked a rational basis for its decision.  <u>McGinnis v. Royster</u>, 410 U.S. 263,

11   269-70 (1973); <u>McQueary v. Blodgett</u>, 924 F.2d 829, 835 (9th Cir. 1991).  Petitioner has failed to

12   show that any other inmate who was similarly situated to him was granted a parole date.

13   Petitioner has also failed to demonstrate that the Board violated his equal protection rights by

14   applying a different suitability standard to him than that applied to others similarly situated.

15   Accordingly, petitioner is not entitled to relief on his claim that his equal protection rights were

16   violated by the Board's conclusion that he was not suitable for parole.

---

18   [3] Petitioner presents several state law claims throughout his petition.  For instance, he alleges that the Board must consider other offenses of similar gravity and magnitude in setting a

19   parole term.  (P&A at 28).  Petitioner also claims that California Penal Code § 3041 requires the Board to grant him a parole date because of its direction that one year prior to an inmate's

20   minimum eligible parole date, a Board panel shall meet with the inmate and "shall normally" set a parole release date; whereas, to the contrary, the Board normally fails to set a parole release

21   date.  (<u>Id.</u> at 25-26, 32-33.)  In addition, petitioner argues that the Board's failure to find him suitable for parole violated various provisions of state law.  Many of petitioner's arguments

22   based on state law have been rejected by the California Supreme Court in <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1084, 1098 (2005) (holding that the Board is not required to refer to its sentencing

23   matrices or to compare other crimes of the same type in deciding whether a prisoner is suitable for parole).  More importantly for purposes of this federal habeas corpus action, petitioner has

24   cited no federal authority for the proposition that the Due Process Clause requires a state parole board to either set a parole date where the Board members believe a prisoner poses an

25   unreasonable risk of danger to society or engage in a comparative analysis before denying parole suitability.  In short, petitioner's arguments that the state court erred in applying state law in

26   determining his release date are not cognizable in this federal habeas corpus proceeding.  <u>Estelle</u>, 502 U.S. at 67-68.

1        D.  Americans With Disabilities Act

2              Petitioner also claims that the Board violated the Americans with Disabilities Act

3   (ADA) when it found him unsuitable for parole based, in part, due to his failure to upgrade

4   vocationally and educationally and to participate in all available self-help and therapy

5   programming.  Petitioner asserts that his physical disabilities prevented him from participating in

6   any such programs.  (P&A at 38.)

7              Petitioner cites the decision in Armstrong v. Davis, 275 F.3d 849, 858-59 (9th Cir.

8   2001) in support of this claim.  In Armstrong, the Ninth Circuit Court of Appeals upheld an

9   injunction entered by the United States District Court against the Board, designed to bring parole

10  consideration hearings into compliance with the ADA.  (Id.)  Among other things, the injunction

11  requires the Board to "ensure that inmates are not instructed by the Panel to participate in

12  programs that are unavailable to them because of their disability."  (Pet., "Exhibits" at 165.)  The

13  injunction also requires that: (1) the Board ensure that prisoners with disabilities are able to

14  participate in parole consideration hearings; and (2) a Life Prisoner Board Report shall be

15  submitted to the Board which describes an inmate's disability and how that disability affects the

16  inmate's ability to participate in recommended programs.  (Id.)  Petitioner alleges that these

17  requirements were not met in his case.  (P&A at 38-39.)

18              Title II of the ADA provides that:"no qualified individual with a disability shall,

19  by reason of such disability, be excluded from participation in or be denied the benefits of the

20  services, programs, or activities of a public entity, or be subjected to discrimination by any such

21  entity."  42 U.S.C. § 12132.  Claims brought pursuant to the ADA are cognizable in habeas

22  corpus actions.  See Bogovich v. Sandoval, 189 F.3d 999, 1004 (9th Cir. 1999).  Similarly, the

23  Ninth Circuit has held that plaintiffs bringing an action for prospective injunctive relief against

24  state parole authorities "may state a claim under Title II [of the ADA] based on their allegations

25  that the parole board failed to perform an individualized assessment of the threat they pose to the

26  community by categorically excluding from consideration for parole all people with substance

18

1  abuse histories." Thompson v. Davis, 295 F.3d 890, 894 n.4 (9th Cir. 2002).  However, the

2  Ninth Circuit has also recognized that the ADA does not bar any consideration of an inmate's

3  disability in making individualized assessment of the future dangerousness of the inmate; but

4  rather bars only the categorical denial of parole to persons with disabilities.  Id.

5          Petitioner has failed to demonstrate that the Board violated the ADA in any

6  respect.  There is no evidence that petitioner was forced to participate in programs for which he

7  was medically unsuited in order to obtain a parole date.  Rather, he was denied a parole date on

8  the basis of numerous factors, only one of which was his failure to participate in "available"

9  programs.  Although petitioner has provided evidence that he is physically impaired, he has

10  failed to show that these impairments prevented him from attending programs offered at the

11  prison.  In addition, as pointed out by respondent, petitioner declined to attend the parole

12  suitability hearing, to have an attorney represent him at the hearing, to be interviewed by his

13  counselor or psychologist, or to submit documents to the Board.  If he had taken advantage of

14  those opportunities, he could have made the same arguments to the Board that he is now making

15  to this court.  "No procedural principle is more familiar to this Court than that a constitutional

16  right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the

17  failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."

18  United States v. Olano, 507 U.S. 725, 731 (1993) (quoting Yakus v. United States, 321 U.S. 414,

19  444 (1944)).  The court also notes that the plaintiffs in the Armstrong case were prisoners who

20  complained that the Board failed to provide them with adequate accommodations at a variety of

21  parole hearings, and parolees who complained about the lack of accommodations during the

22  parole revocation process.  275 F.3d at 855.  Aside from petitioner's unsupported allegations,

23  there is no evidence in the record before this court that petitioner was unable to attend his

24  November 27, 2001 parole suitability hearing because of a physical disability or that a lack of

25  accommodation by the Board prevented his attendance.  Accordingly, the Armstrong decision is

26  inapposite to the facts of this case.

1    In any event, there is no evidence in the record that petitioner was found

2    unsuitable for parole because of his failure to participate in programs for which he was medically

3    unsuited or that he was forced to participate in any particular program.  The court also notes that

4    petitioner's past history of substance abuse was a legitimate factor for the Board to take into

5    consideration, along with other factors, in determining whether he was suitable for release on

6    parole.  The mere fact that the Board advised petitioner to participate in self-help programs does

7    not demonstrate that the Board's decision finding petitioner unsuitable for parole resulted from a

8    policy of discriminating against any class of persons.  There is no credible evidence that

9    discrimination played any part in the Board's decision.  In short, petitioner has failed to

10   demonstrate that the Board's refusal to find him suitable for parole "was by reason of [his]

11   disability."  Thompson, 295 F.3d at 895.  Accordingly, for all of these reasons, petitioner is not

12   entitled to habeas relief with respect to his ADA claim.

13          E.  No Parole Policy

14          Petitioner claims that he was denied parole as a result of the Board's application

15   of a "no parole policy" in effect during the administration of former California Governor Gray

16   Davis.  (P&A at 40-45.)   He contends that "the BPT is approaching all parole hearings with a

17   predetermined result."  (Id. at 41.)  In support of this claim, petitioner has offered argument,

18   citations to California caselaw and newspaper articles attempting to show that invalid parole

19   policies and practices existed under former California Governor Davis.  (Id. at 42-45.)

20          The parole denial challenged in this case occurred when Gray Davis was the

21   Governor of California.  The evidence submitted by petitioner demonstrates that under the Davis

22   administration, virtually every prisoner convicted of murder was found unsuitable for parole,

23   with rare exceptions.  The Ninth Circuit Court of Appeal has acknowledged that California

24   inmates have a due process right to parole consideration by neutral decision-makers.  See

25   O'Bremski v. Maas, 915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release

26   date considered by a Board that [is] free from bias or prejudice").  Accordingly, parole board

20

1    officials owe a duty to potential parolees "to render impartial decisions in cases and controversies

2    that excite strong feelings because the litigant's liberty is at stake." Id. (quoting Sellars v.

3    Procunier, 641 F.2d 1295, 1303 (9th Cir. 1981)).  Indeed, "a fair trial in a fair tribunal is a basic

4    requirement of due process." In re Murchison, 349 U.S. 133, 136 (1955).

5           Based on the authorities cited above, petitioner is correct that he was entitled to

6    have his release date considered by a Board that was free of bias or prejudice.  However, even

7    assuming arguendo that petitioner was found unsuitable for parole based on a "no parole" policy

8    for life prisoners in effect at that time, petitioner has failed to show prejudice.  Respondent has

9    submitted evidence that petitioner had another parole suitability hearing on June 26, 2006, at

10   which he was again found unsuitable for parole for a period of four years.  (See "Response to

11   July 1, 2008 order," filed July 8, 2008).  Gray Davis was not the Governor of California at the

12   time of petitioner's June 26, 2006 suitability hearing, and petitioner has offered no evidence

13   suggesting that the Board was operating under a no-parole policy for life prisoners after Governor

14   Davis left office.  Therefore, petitioner has already received all the relief to which he would be

15   entitled with respect to this claim: a new parole hearing before an unbiased Board panel.  Under

16   these circumstances, petitioner has failed to establish that the outcome of a new suitability

17   hearing would have changed before a different panel.  Accordingly, petitioner is not entitled to

18   relief on this claim.  See O'Bremski, 915 F.2d at 423 (parolee failed to establish prejudice where

19   a neutral parole panel at a new hearing would reach the same outcome).

20                                        CONCLUSION

21          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

22   a writ of habeas corpus (Doc. No. 1) be denied.

23          These findings and recommendations are submitted to the United States District

24   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

25   days after being served with these findings and recommendations, any party may file written

26   objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 21, 2008.

Dale A. Drozd

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
garcia1779.hc

22